**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| Joseph H. Gibbs, #185709 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: 3:08-3955-PMD |
| v. | ) | |
| | ) | |
| | ) | |
| Mr. John E. Ozmints, as Director of SCDC, | ) | **ORDER** |
| et al, Respondeat Superior, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Plaintiff Joseph H. Gibbs's ("Plaintiff") objections to the

Report and Recommendation ("R&R") of a United States Magistrate Judge. Plaintiff filed this

action, *pro se*, in the Court of Common Pleas of Marlboro County, South Carolina. Plaintiff is an

inmate at the Evans Correctional Institution ("ECI") of the South Carolina Department of

Corrections ("SCDC") serving a life sentence for Murder. On December 5, 2008 the action was

removed by the Defendants to this court. On December 19, 2008, Plaintiff made a Motion to

Remand the case back to state court. Plaintiff's Motion to Remand was denied on August 5, 2009.

Defendants filed a Motion for Summary Judgment on April 3, 2009, on May 19, 2009 the Plaintiff

filed a response, and on May 26, 2009 the Defendants filed a reply.

On October 15, 2009, in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, the

Magistrate Judge entered a Report and Recommendation ("R&R") recommending that Defendant's

motion for summary judgment be granted and Plaintiff's action be dismissed. On October 15, 2009,

Petitioner filed a motion to extend the deadline to file his objections, and on October 21, 2009, the

court issued an Order granting Petitioner an extension of time up to and including November 10,

2009 to file his objections to the R&R. On November 13, 2009, the court had not yet received

Plaintiff's objections to the R&R and filed an order adopting the R&R and granting summary judgment in favor of the Defendants. On November 17, 2009, the court issued an order vacating its November 13, 2009 order after receiving Petitioner's objections and noting that Petitioner had timely filed objections on November 6, 2009. Having reviewed the entire record, including Plaintiff's objections, the Court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the Court adopts the R&R and fully incorporates it into this Order.

**Background**

**1.     Plaintiff's Medical and Dental Care**

This action arises from alleged incidents that occurred while Plaintiff was an inmate at ECI. While housed at ECI, Plaintiff was diagnosed with a left hillar mass in his lung, which ultimately caused Plaintiff to have his lung removed. In his Complaint, Plaintiff alleges improper and inadequate medical diagnosis and treatment by the medical staff at SCDC. Plaintiff claims that he approached the medical staff on multiple occasions beginning in early 2005 and through October 2005, complaining of coughing up blood. Plaintiff essentially argues that Defendants should have recognized that he had cancer much sooner and argues that the delay in diagnosis caused the lung cancer to advance. Plaintiff also complains about the Dental care he received and claims that there are Constitutional violations in the procedures used for inmate dental care.

Defendants claim that the records clearly establish that as soon as Plaintiff made his first complaint of coughing up blood, he received a Chest X-Ray, which showed normal results. Defs.'s Mem. p. 2 (citing Patel Aff. ¶ 10). Thereafter, Plaintiff did not complain of coughing up blood in any large amounts, and the amount of blood he did complain of could have easily resulted from smoking

cigarettes, poor dental hygiene including injured teeth, or a cold. Id (citing Patel Aff. generally). Defendant notes that when Plaintiff did complain of coughing up blood in October 2005, he was promptly tested and referred to specialists, ultimately resulting in his diagnosis of cancer. Id. Dr. Patel also testified that the cancer never spread beyond the lungs. Id. (citing Patel Aff. ¶ 28). Defendants also point to the affidavit of Dr. Tripp Jones, an oncology expert, who has reviewed the records and found that the care of Plaintiff was appropriate. Id. (citing Jones Aff.). Defendant argues that the record in this case clearly establishes that Plaintiff has been appropriately treated at all times. Further, Defendant argues that Plaintiff has failed to properly exhaust his administrative remedies.

While incarcerated at ECI, Plaintiff first complained of coughing up blood on December 20, 2004. Plaintiff claims that at this time Plaintiff was told that sick call was closed until the new year. Corrections Officer Ford states that he does not remember Plaintiff complaining of coughing up blood and that if Plaintiff did complain an incident report would have been filed. Officer Ford also says that the medical department is always available for emergency care. Ford Aff. ¶ 1,4,5. Amy Smith, a Registered Nurse for SCDC, states that during the time Plaintiff claims medical was closed, emergency care was always available and sick call occurred four days each week excluding holidays. Smith. Aff. ¶ 1,4.

Plaintiff next complained of blood in his urine on January 17, 2005 at which point he was seen by Amoret Floyd, a licenced practical nurse for the SCDC. Floyd then referred Plaintiff to Dr. Pravin Patel, a physician at ECI. Floyd Aff. ¶ 1,4,5. Dr. Patel ordered x-rays, including a chest x-ray, on January 17, 2005. These x-rays were taken on January 20, 2005 and appeared normal. Parrish Aff. ¶ 3,4.

Dr. Patel states that his first involvement with Plaintiff was on January 17, 2005 when Plaintiff complained to Nurse Floyd about blood in his urine. Patel Aff. ¶ 1,4. He states that Plaintiff reported coughing up blood on one occasion approximately two weeks prior. Dr. Patel was aware that Plaintiff was a smoker and also states that this could be the cause of the periodic blood. He also states that the coughing may have been caused by bronchitis related symptoms and that to treat this, Plaintiff was placed on antibiotics. Lab work and chest x-rays were also ordered. Id. ¶ 5,6.

Plaintiff returned to medical two days later and a second antibiotic was added to the treatment. Plaintiff had an elevated PSA but otherwise had normal lab results. Dr. Patel also states that Plaintiff's chest x-ray was noted to be normal on February 3, 2005, and that the x-ray indicated no chest or lung problems. Further, Dr. Patel states that there was no need for any follow-up care for lung or chest problems based on the lab work and x-rays. However, Dr. Patel's understanding is that Plaintiff was seen by a urologist but refused followup care. Plaintiff later told Dr. Patel that he did not refuse care, and Dr. Patel put in a second request for a consultation with the Urologist. Id. ¶ 7-13. Plaintiff's PSA was later found to be a false-positive. Id. ¶ 15.

Dr. Patel also saw Plaintiff on February 22, 2005 but states that Plaintiff did not complain of blood. Id. ¶ 13. The Plaintiff rejects this and states that he complained of coughing blood but the complaints were dismissed. Pl.'s Objections to R&R p. 8. The medical records indicate that Plaintiff complained of coughing up blood on March 5 or 6, 2005, but there is no record of Dr. Patel seeing the patient at this time.

On March 6, 2005, Nurse Floyd again examined Plaintiff after he had complained again that he was coughing up blood. Nurse Floyd's notes reveal that Plaintiff was not in any distress and that there was only a minimal amount of blood on a tissue. Nurse Floyd states that she was aware that

Plaintiff smoked, a possible cause for the periodic bleeding, and Plaintiff was informed that he could return to sick call for treatment or to request a doctor if one was needed. Floyd Aff. ¶ 7,8. Dr. Patel confirms that Nurse Floyd's treatment was appropriate because there was only a small amount of blood and that this could have been caused by scratches on the Plaintiff's gum or cheek, bad teeth, smoking, or a cold. Patel Aff. ¶ 14.

On March 18, 2005, Plaintiff again presented a small amount of blood on a tissue. Nurse Floyd thought that the blood could be caused by his smoking, his having a cold (which he did have at the time), or bad teeth (which he also had). Nurse Floyd also checked the Plaintiff's vitals at this time which were normal. Nurse Floyd followed the standing orders for treating a cold and counseled the Plaintiff to stop smoking. Plaintiff was also advised to return to sick call in three days if his symptoms did not improve. Floyd Aff. ¶ 9-11. Dr. Patel also states that on March 18, 2005, Plaintiff did not indicate an ongoing problem and that treatment was reasonable. Four days later, Plaintiff returned to medical but made no complaints about bleeding. Patel Aff. ¶ 16,17.

On June 23, 2005, Nurse Floyd again examined Plaintiff for a cold and a broken tooth. She followed the standing order for treating a cold and referred the Plaintiff to dental for the treatment of the broken tooth. Floyd states that Plaintiff did not complain about bleeding at this time. Floyd Aff. ¶ 19. Dr. Patel confirms that Plaintiff made no complaints about bleeding and also notes that this broken tooth could have caused the previous bleeding. Plaintiff was again told to stop smoking. Plaintiff's PSA level was checked again on October 11, 2005 and was normal. Patel Aff. ¶ 18,19; Floyd Aff. ¶ 14.

On October 31, 2005, Plaintiff again complained of coughing up blood. Dr. Patel states that this was the first time that Plaintiff complained of any excessive blood. Plaintiff was referred to Dr.

Patel.  He ordered chest x-rays and lab work.  At this time, the lab results were negative for cancer.

The x-ray taken on November 15, 2005 indicated a possible lung mass and a CT scan was ordered.

The Plaintiff was told to return to see Dr. Patel the following week.  Patel Aff. ¶ 20-22. The CT scan

was taken on November 25, 2005 and indicated a large left hilar mass on Plaintiff's lung at which

point Plaintiff was referred to a pulmonologist for treatment.  Dr. Patel states that once Plaintiff was

referred to the pulmonologist, the pulmonologist took over Plaintiffs care and that any consults for

treatment were approved.  Id. ¶ 24,25.

Dr. Patel further states: (1)  the timing of Plaintiff's appointments did not cause the cancer

to advance; (2) Plaintiff failed to come to several appointments that were scheduled at SCDC; (3)

based on labs and other tests, the cancer was caught before it spread beyond Plaintiff's lung; (4)

Plaintiff's cancer is consistent with that found in someone who is a smoker; (5) Plaintiff had his lung

removed, went through chemotherapy, and received follow-up care both by ECI medical staff and

other physicians; (5) Plaintiff was enrolled in a three month follow-up care schedule with an

oncologist; (6) Plaintiff has failed to appear at a portion of these appointments; and (7) there is no

sign of any other tumors.  Id. ¶ 27-32.    It is Dr. Patel's opinion that Plaintiff was treated in

accordance with generally accepted medical practices and that at no time did he or anyone else at

SCDC deny Plaintiff medical care or treat him inappropriately.  Id. ¶ 34,35.

Dr. George Tripp Jones of South Carolina Oncology Associates states that Plaintiff's care

prior to October 31, 2005 was appropriate based on Plaintiff's complaints and symptoms.  He states

further that the timing of Plaintiff's appointments with specialists (after Plaintiff was diagnosed with

cancer) did not cause his cancer to advance.  Jones Aff. ¶ 1,7,13.

Plaintiff's medical records indicate that Plaintiff was seen in the dental clinic as well. Mary Hage, a registered nurse employed as the Health Authority at ECI, states that inmates who wish to see the dentist are advised to sign up with the dental clinic. She states further that during the time frame in question, the dentist came to ECI three days per week and the dental office handled the appointments. Inmates are charged a co-pay for dental treatment, but if the inmate does not have the money, he is still seen by the dental clinic. Hage Aff., ¶ 1,17,18.

### 2. Conditions of Confinement

Plaintiff also alleges that he was subjected to unconstitutional conditions of confinement because he was placed on a top bunk, required to carry his mattress to medical for treatment, and placed in a "smoking" cell after his surgery. Pl.'s Compl. ¶ 21. Defendants argue that the Plaintiff has not established any serious injury from his conditions of confinement and that he has not shown that Defendants acted with a sufficiently culpable state of mind. See generally Def.'s Mem. in Supp. of Def.'s Mot. Summ. J.

Mary Hage, the Healthcare Authority at ECI, states that at ECI there are no "smoking rooms" because smoking is not allowed in cells. She also states that no restrictions were placed on the Plaintiff as to his movement or residence except that he needed a "no work" pass. Inmates are also not allowed to carry their mattresses with them to the medical center. Ms. Hage states that if an inmate needs to lie down, the medical staff have a stretcher or examination bed that can be used by the inmate. Hage Aff. ¶ 12-14.

### 3. Plaintiff's Internal Grievances

Internal Grievances must be made within fifteen days of the alleged incident. Skipper Aff. ¶ 8. Sue Skipper, The Inmate Grievance Coordinator at ECI, provides that Plaintiff filed a grievance

about the ventilation (it is unclear if this is in reference to the "smoking room") in 2003 that he later withdrew. A second grievance in relation to the ventilation was filed in 2005, but it was returned to plaintiff because he did not indicate how he attempted to informally resolve the issue. Id. ¶ 1,9. No other grievances were filed in regards to medical care during the time in question. Id. ¶ 10. The first grievance filed by Plaintiff relating to medical care was filed in September of 2007, but it was denied because the Plaintiff attached a six page affidavit while SCDC policy only allows one additional page. Id. ¶ 12,13. This issue was again presented as a grievance but the grievance was not accepted because it was outside of the time to file such grievances. Id. ¶ 15.

### 4. Defendant's Motion for Summary Judgment

Defendants claim that they are entitled to summary judgment because (1) they are not "persons" amenable to suit under 42 U.S.C. § 1983; (2) they are immune from suits for money damages pursuant to the Eleventh Amendment; (3) Director Jon Ozmint has had no personal involvement with the Plaintiff; (4) the Plaintiff has failed to exhaust his administrative remedies; (5) the Plaintiff has failed to show deliberate indifference on behalf of the Defendants; (6) the Plaintiff has failed to state a Constitutional claim in regard to the condition of his confinement because there exists no evidence of a Constitutional deprivation; (7) these defendants are entitled to qualified immunity; (8) the Plaintiff fails to state a Constitutional claim because there is no Constitutional right to the grievance process; and (9) that the action should be dismissed under 28 U.S.C. § 1915(e) and § 1915A and should count as a "strike" as well.

### STANDARD OF REVIEW

### A. Magistrate Judge's R&R

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local

Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no

presumptive weight, and the responsibility for making a final determination remains with the court.

*Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to

a Magistrate Judge's report within fourteen days after being served a copy of the report. 28 U.S.C.

§ 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been

specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in

part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions.

*Id.*

B.      **Legal Standard for Summary Judgment**

To grant a motion for summary judgment, the Court must find that "there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56©.  The Court is not to weigh the evidence but rather to determine if there is a genuine issue for

trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  All evidence should be viewed

in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915

F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier

of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters*

*Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The "obligation of the nonmoving party is 'particularly

strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381

(4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary

judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out

"claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

**C.**     ***Pro Se* Litigants**

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon*

*v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally

construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious

case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however,

does not mean that the court can ignore a clear failure in pleading to allege facts which set forth a

claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th

Cir. 1990).

## ANALYSIS

**1.     Medical Claims**

Plaintiff has alleged that the medical treatment provided by ECI and SCDC was inadequate

to meet the Constitutional requirements because his complaints about coughing up blood were either

ignored or not handled properly.  Plaintiff claims that he was denied treatment between December

of 2004 and January of 2006 when he complained several times of coughing up blood.  Further, the

Plaintiff claims that this lack of diagnosis and treatment led to the spread and acceleration of the lung

cancer.  Plaintiff claims that the dental care provided by ECI is not sufficient because he is forced to

pay for outside medical care.  The Magistrate Judge found that Plaintiff's claims are barred by the

exhaustion requirement of the Prison Litigation Reform Act ("PLRA") because the Plaintiff had not

exhausted all of his administrative remedies prior to filing his complaint.

This court reviews de novo only those portions of the Magistrate Judge's R&R that were specifically objected to by the Plaintiff. 28 U.S.C. §636(b)(1). In Plaintiff's Objection #3, he argues that he is not required to exhaust all of his administrative claims because the PLRA does not apply to this action because it is a civil action that was removed from state court.

The PLRA requires that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate's failure to allege exhaustion does not constitute failure to state a claim, rather failure to exhaust is an affirmative defense that should be raised by the Defendant. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). Defendant raised this ground as a defense in their answer (Def.'s Answer ¶ 14) and again in their motion for summary judgment. Def.'s Mem. in Supp. of Def.'s Mot. Summ. J. p. 7. The district court is also not precluded from inquiring "on its own motion into whether the inmate exhausted all administrative remedies" where the failure to exhaust seems apparent on the face of the Complaint. *Anderson,* 407 F.3d at 683.

A prisoner has not exhausted all of his administrative remedies by "failing to follow the required steps so that remedies that once were available to him no longer are." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Exhaustion requires that the prisoner utilize all available procedures so that prison officials have the opportunity to remedy the situation administratively. *Id.* The administrative procedures for the South Carolina Department of Corrections require that an inmate file a grievance (Step One) and then if not satisfied, he must appeal (Step Two) that decision within five days. SCDC Policy GA-01.12, Inmate Grievance System, § 13.5. Appeals to the

Administrative Law Court ("ALC") are not available for the types of violations alleged by Plaintiff and appeal to the ALC is not required as part of exhaustion.  Id. §13.6.

The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Furthermore, the Plaintiff is required to exhaust his administrative remedies irrespective of whether the action was brought in state court and later removed to federal court or was originally brought in federal court. *See Blakely v. Ozmint*, 2006 WL 2850545  (D.S.C. 2006).

SCDC policy requires that internal grievances be made with fifteen days of the alleged incident.  SCDC Policy GA-01.12, Inmate Grievance System, § 13.1.  The record shows that Plaintiff did not file any grievances related to the  2005 or 2006 health care in either of those years.  His first claim regarding healthcare was made in  2007 but was returned to him unprocessed because he failed to follow appropriate procedure.  Skipper Aff. ¶ 12,13.  This grievance was later re-filed but was also returned unprocessed because it was duplicative and untimely filed.  Id. ¶ 15.  There is nothing in the record to reflect that Plaintiff filed a Step Two grievance regarding either of these claims.

Plaintiff has not exhausted his remedies because he did not file timely grievances related to medical care with the  SCDC.  Allowing the fifteen day time period for the filing of grievances or the five day period for appeals to lapse does not constitute exhaustion of those remedies. *Moore*, 517 F.3d at 725.

Plaintiff further contends that, even if he did not exhaust his administrative remedies, the PLRA's exhaustion requirements do not apply because this is not a § 1983 action.  This objection is without merit because the PLRA's exhaustion requirements  apply to all civil suits based on prisoner

life brought in state courts that are later removed to federal court. *See Porter,* 534 U.S. 516 (holding that the PLRA's exhaustion requirements apply to all inmate suits about prison life) *and Blakely,* 2006 WL 2850545 (holding that exhaustion requirements apply whether or not the suit was brought in state court and later removed to federal court). The PLRA applies because the Plaintiff's claims are based on alleged violations of the Constitution while he was an inmate at ECI. Therefore, the Plaintiff's objection to the Magistrate Judge's finding on exhaustion is without merit and the recommendation of the Magistrate Judge as it relates to medical care is adopted and incorporated into this Order.

### 2. Conditions of Confinement

Plaintiff has also alleged that the conditions of confinement at ECI were unacceptable and did not meet the Constitutional requirements for correctional institutions. Plaintiff claims that he was denied ventilation in a "smoking room" at ECI. He also contends that when he returned from medical treatment he was forced to sleep on the top bunk, which was difficult in his condition. He also claims that while he was reporting to and from the medical area, he was forced to carry his mattress across the yard, again, a difficult task in his condition. Further, he complains that while he was prevented from having comfortable arrangements in the medical ward, specifically that he was denied a foam pad for a steel bed.

Plaintiff filed grievances related to the ventilation system at ECI in 2003 and 2005. Skipper Aff. ¶ 9. The grievance that was filed in 2003 was withdrawn and the 2005 grievance was returned to the inmate because he had not indicated how he had tried to informally resolve the issue. Id. There is no evidence to show that either of these grievances were appealed to the headquarters of the SCDC (called a Step Two grievance). Id. ¶ 7. There is also no evidence that grievances were filed

relating to any of the other complaints of Plaintiff.

The Magistrate Judge found that Plaintiff's conditions of confinement claims were without merit because the Plaintiff has failed to show any serious significant physical or emotional injury or that the prison officials acted with a sufficiently culpable state of mind. As the Magistrate Judge noted, "the constitutional prohibition against the infliction of cruel and unusual punishment 'does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" R&R p. 11 (citing *Wilson v. Seiter,* 201 U.S. 294, 298 (1991)).  Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components.  First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency.  R&R p. 12 (citing *Rhodes v. Chapman,* 522 U.S. 337 (1981)).  Second, Plaintiff must show that, subjectively, the prison officials acted with a sufficiently culpable state of mind.  Id. (citing *Strickler v. Waters,* 989 F.2d 1375, 1379 (4th Cir.), *cert denied,* 510 U.S. 949 (1993)).  The Magistrate Judge found that in this case Plaintiff has failed to show a serious or significant physical or emotional injury resulting from the alleged conditions.  Second, the Magistrate Judge found that Plaintiff failed to show that, subjectively, the prison officials acted with a sufficiently culpable state of mind.

In Plaintiff's Objection #2, Plaintiff argues that he is not making a conditions of confinement claim and any opinion addressing such would be an advisory opinion.

Plaintiff's position is that his complaints are not considered "conditions of confinement." This position is without merit because based on the complaint and subsequent pleadings of the Plaintiff it appears that he complains of the medical care he received, the lack of ventilation of the facility, and the treatment he received while sick and recovering.  These have all  been held to be "conditions of

confinement" and are thus subject to the restrictions put on such claims. *Farmer v. Brennan*, 511 U.S. 825 1994 (stating that the Eighth Amendment "imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care"). After reviewing the record, the Court finds that the Magistrate Judge correctly analyzed Plaintiff's conditions of confinement claims and found that his complaints did not amount to a constitutional deprivation. Furthermore, the Court finds that Plaintiff has also failed to exhaust his conditions of confinement claims. The record reflects that Plaintiff did not properly file a Step One grievance for any of the conditions of confinement claims. Furthermore, none of these claims were appealed in a Step Two grievance. As noted above, the PLRA's requirements for exhaustion apply to civil claims that assert violations of the Constitution (or other federal law) as grounds for relief. In this case, those exhaustion requirements are not met for the conditions of confinement claim.

3.      **Plaintiff's Remaining Objections**

Plaintiff's other objections fail to address the holding upon which the Magistrate Judge based his recommendation, instead they reiterate the arguments Plaintiff makes in his Complaint and in his "Answer to Defendant's motion for Summary Judgment." As stated above, the Court finds that Plaintiff has failed to meet the PLRA's exhaustion requirements with respect to all of his claims. Therefore, Plaintiff's remaining objections are without merit. Accordingly, the Court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law and therefore adopts and incorporates the recommendations of the Magistrate Judge into this Order.

4.      **Plaintiff's State Law Claims**

Plaintiff appears to assert claims under South Carolina law. Any such claims are based on state law and premised on supplemental jurisdiction. Because the court grants Defendants' motion for summary judgment on all of Plaintiff's claims for which it has original jurisdiction, the court also dismisses any additional claims for relief under state law for lack of jurisdiction. 28 U.S.C. § 1367(c)(4).

## **CONCLUSION**

Based on the foregoing, the court **GRANTS** Defendants' Motion for Summary Judgment and **DISMISSES** Plaintiff's Complaint without prejudice. **AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**July 23, 2010**
**Charleston, SC**

NOTICE OF APPEAL

Plaintiff is hereby notified that he has the right to appeal this Order within thirty (30) days from the date hereof pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.